IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:21-cv-717-RAH-SMD |
| | ) | |
| $20,160.82 IN UNITED STATES CURRENCY SEIZED FROM CAPITAL CITY BANK ACCOUNT NUMBER xxxxxxx9174 IN THE NAME OF BENJAMIN JORDAN BROCK, d/b/a MUSIC 4 MEDICINE; and | ) ) ) ) ) ) | |
| | ) | |
| $11,399.54 IN UNITED STATES CURRENCY SEIZED FROM CAPITAL CITY BANK ACCOUNT NUMBER xxxxxxx2358 IN THE NAME OF JERMONDE DONTE CRIM | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, the United States of America (hereinafter, "United States") by and through Sandra J. Stewart, Acting United States Attorney for the Middle District of Alabama, and Eric M. Counts, Assistant United States Attorney, brings this Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1.  This is a civil action *in rem* to forfeit and condemn the defendants to the United States pursuant to 18 U.S.C. § 981(a)(1)(D)(vi) for violations of 18 U.S.C. § 1343 (wire fraud).

**THE DEFENDANTS *IN REM***

2.  Defendant $20,160.82 in United States Currency seized from Capital City Bank account number xxxxxxx9174 in the name of Benjamin Jordan Brock, d/b/a Music 4 Medicine was seized from Benjamin Jordan Brock on June 3, 2021, pursuant to a United States Secret

Service Surrender Property form. Defendant $11,399.54 in United States Currency seized from Capital City Bank account number xxxxxxx2358 in the name of Jermonde Donte Crim was seized from Jermonde Donte Crim on June 3, 2021, pursuant to a United States Secret Service Surrender Property form. The defendants are currently in the custody of the United States Secret Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendants pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) because the acts or omissions giving rise to the forfeiture occurred in this district and the property is located in this district.

## BASIS FOR FORFEITURE

6. The United States brings this action *in rem*, in its own right to forfeit and condemn the defendants under 18 U.S.C. § 981(a)(1)(D)(vi).

7. The United States seeks to forfeit the defendants because they represent, or are traceable to, the gross receipts obtained, directly or indirectly, from violations of 18 U.S.C. § 1343 (wire Fraud), which states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits

2

or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . .or affect a financial institution, . . . shall be fined $1,000,000 or imprisoned not more than 30 years, or both. **18 U.S.C. § 1343.**

## FACTS

The facts and circumstances supporting the seizure of the defendants are as follows:

### I. Background

#### A. Overview of the Paycheck Protection Program

1. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities through a program referred to as the Paycheck Protection Program (PPP).

2. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application to a participating lender. An authorized representative of the business was required to sign an application. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. The amount of a PPP loan that a small business may be entitled to receive was determined by the number of persons employed by the business and the business's average monthly payroll costs. In general, the more employees a business had and the higher its average monthly payroll cost, the larger a PPP loan the business was eligible to

3

receive. In addition, businesses applying for a PPP loan were required to provide documentation establishing their payroll expenses.

3. The PPP loan application also required a business (through its authorized representative) to acknowledge its understanding of the program rules and make certain affirmative certifications. Businesses were required to use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities. Specifically, in submitting the loan applications, the business (through its authorized representative) was required to certify, among others, each of the following representations:

    a. The Applicant business was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Internal Revenue Service ("IRS") Form(s) 1099-MISC;

    b. The funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule;

    c. During the period beginning February 15, 2020 and ending on December 31, 2020, the Applicant business had not and would not receive another loan under the PPP;

    d. The information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

4. The United States Small Business Administration (SBA) oversaw the PPP. However, individual PPP loans were issued by private, SBA-approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds. PPP loans were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

**B. Capital City Bank (CCB) Investigation**

5. The CCB Fraud Prevention Department, is responsible for monitoring customer accounts and identifying potentially fraudulent activity. Part of exercising due diligence in this regard is to track PPP loan disbursements and flag any irregularities for further investigation. As a result of ongoing monitoring activities, Defendants CCB account number xxxxxxx9174 in the name of Benjamin Jordan Brock, d/b/a Music 4 Medicine and CCB account number xxxxxxx2358 in the name of Jermonde Donte Crim were identified as receiving potentially fraudulent SBA PPP automatic clearinghouse (ACH) deposits.

6. CCB contacted the USSS in reference to the defendant accounts and reported their suspicions based on some of the following factors present in the accounts:

   a. Newly created accounts with abnormal transaction activity (little to no prior financial transactions) or existing accounts with no activity in the 24 months prior to the SBA PPP deposits;

   b. Large SBA PPP loan amounts or deposits with minimal or no other sources of deposits;

   c. Attempts to quickly move funds out of depository accounts (within 1-2 days), including suspicious ATM withdrawals;

   d. Inability to positively identify account holders (synthetic or unauthorized accounts);

   e. No customer inquiries after funds were frozen;

   f. No proper identification supplied in instances where funds were frozen and followed by a customer inquiry and request for customer identification;

g. Businesses or entities did not exist before February 15, 2020;

h. PPP loans used to start new businesses;

i. Falsified backup documentation and state wage/earning records; and

j. Borrower could not provide payroll documentation to justify the payroll costs.

C. **Capital City Bank account number xxxxxxx9174 in the name of Benjamin Jordan Brock, d/b/a Music 4 Medicine (Brock account)**

7. The Brock account was a new account opened on March 18, 2021 with $50.00 cash. There were no other deposits and very little activity until May 11, 2021 when Benjamin Brock (Brock) received an ACH deposit in the amount of $20,460.00 funded by Fountainhead SBF, LLC (Fountainhead), a non-bank direct commercial lender.

8. On May 17, 2021, Debbie Tortoreo (Tortoreo), Fraud Prevention Manager of CCB, contacted Brock and asked him if he would email or hand deliver supporting documentation for his PPP loan to one of the CCB branches located in Valley, Alabama. In response, Brock submitted a partial PPP loan application, but declined to send any supporting documentation such as a Schedule C or its draft. Brock informed Tortoreo that he did not know what was listed as his payroll costs on his application and he only knew that his business was started sometime in 2019.

9. On May 21, 2021, Tortoreo contacted Brock to again request supporting documentation for the loan. In response, Brock informed Tortoreo that he would like his PPP deposit to be sent to his Chime account. Chime is a full-featured deposit account which allows an account holder to receive direct deposits and supports pre-authorized interbank transfers through the ACH network. Due to the sheer number of fraudulent transactions using Chime accounts, they were banned by the SBA. Tortoreo informed Mr. Brock that Chime was no longer accepting PPP loan deposits.

10. Tortoreo believed that the funds held in the Brock account contained proceeds obtained from the theft and misuse of public funds and/or wire fraud offenses because there was no evidence of any legitimate business income deposited into the account, and Brock could not provide backup documentation for state wage/earning records or payroll documentation to justify payroll costs. Tortoreo froze the Brock account due to potential fraud and contacted the USSS.

11. On June 2, 2021, USSS Special Agent (SA) Richard Martin made contact with Brock and requested a meeting to discuss the funds he received into his bank account. On June 3, 2021, SA Martin and USSS SA Kenneth Hedgspeth met with Brock at CCB located at 3503 20th Avenue in Valley, Alabama.

12. During the interview, Brock stated that he had heard chatter on social media about people in the Lanett, Alabama area getting "free money" from the SBA via PPP loans. Brock said someone told him about an unknown male who resides in Fairburn, Georgia signing people up to receive PPP loans. Brock admitted that he and the unknown male never met or spoke to one another, but instead exchanged text messages. Brock added that the unknown male asked him if he had decent credit and informed him that he only needed his social security number and a bank account number to receive funds.

13. Brock said the unknown male explained how he would receive the PPP loan deposit and informed him that the fee for completing the application on Brock's behalf was $4,000.00. He further informed agents that the unknown male provided him with information and instructions on what to say when questioned by bank officials. Brock provided SA Martin with the unknown male's phone number.

14. SA Martin explained to Brock that providing his personal identifying information (PII) to another individual for the purpose of providing false statements to a financial institution

7

on his behalf in an attempt to deceive said institution is Wire Fraud. SA Martin informed Brock that, based on the information provided during the interview, he fraudulently obtained the $20,460.00. Brock acknowledged that he had committed wire fraud and agreed to surrender the remaining funds to the USSS. Brock signed a USSS Agreement to Surrender Property form surrendering Defendant $20,160.82 in United States Currency seized from Capital City Bank account number xxxxxxx9174 in the name of Benjamin Jordan Brock, d/b/a Music 4 Medicine to the USSS.

### D. Capital City Bank account number xxxxxxx2358 in the name of Jermonde Donte Crim (Crim account)

15. The Crim account is a personal bank account that was opened on September 9, 2019 by Jermonde Donte Crim (Crim). Two PPP loans were deposited into the account: one on April 9, 2021 in the amount of $10,743.00, and the other on May 3, 2021 in the amount of $10,743.00. Both loans were funded by Fountainhead and deposited into the Crim account via ACH deposit.

16. On April 27, 2021, LeeAnn Newton (Newton), CCB Fraud Prevention, contacted Crim to inquire as to the specifics of his business. Crim stated he owned a catering business, but he was unable to provide specifics for the business such as gross income or monthly average of clients served. Because Crim's deposit activity and account history showed no transactions that could be attributed to a catering business, the account was flagged as containing potentially fraudulent PPP loan proceeds. Newton requested supporting documentation from Crim regarding the loans, and advised that he could either email the documentation or hand deliver it to a CCB branch.

17. Crim took the documents into CCB's Fob James office and they were emailed to Newton. Crim submitted partial tax returns for tax years 2019 and 2020. The IRS Schedule C

8

(Profit or Loss from Business) for 2019 looked to be altered. In Part 1 – Self-Employment Tax, lines 7 and 14 were in a different font and size than all the other figures on the form. Additionally, Schedule C showed the business as Crim's Lawn Service – not a catering service. Schedule C for 2020 listed the business as DJ Entertainment – not a catering service. Because no business activity was present in the account, transactions were primarily cash transactions, and supporting documentation showed multiple business types, CCB believed that the funds held in the Crim account contained proceeds obtained from the theft and misuse of public funds and/or wire fraud offenses and relayed this information to the USSS.

18.   On June 2, 2021, USSS Special Agent (SA) Richard Martin made contact with Crim and requested a meeting to discuss the funds he received into his bank account. On June 3, 2021, SA Martin and SA Hedgspeth met with Brock at CCB located at 3503 20th Avenue in Valley, Alabama.

19.   Crim stated that he was looking for money to help him float his businesses and that he purchased a vehicle, a generator, speakers, and dollies for his businesses with the funds he received from the two PPP loans. When questioned, Crim admitted that he inflated his gross income on the applications by combining his reported losses to equal $132,900.00 in order to get approval for the loan. Crim admitted that he was the sole employee of his businesses. SA Martin explained to Crim that providing an inflated gross income on his application would result in receiving a larger loan amount, and that providing a false statement to a financial institution in an attempt to deceive said lender is Wire Fraud.

20.   SA Martin informed Crim that, based on the information he provided during the interview, he fraudulently obtained the $21,486.00 (the total combined amount of the two PPP loans). Crim acknowledged that he had committed wire fraud and agreed to surrender the

9

remaining funds to the USSS. Crim signed a USSS Agreement to Surrender Property form surrendering Defendant $11,399.54 in United States Currency seized from Capital City Bank account number xxxxxxx2358 in the name of Jermonde Donte Crim to the USSS.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendants be condemned and forfeited to the United States as property representing proceeds of wire fraud, that the United States be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted this 26th day of October, 2021.

SANDRA J. STEWART
ACTING UNITED STATES ATTORNEY

**Eric M. Counts**
ERIC M. COUNTS
Assistant United States Attorney

Address of Counsel:

Office of the United States Attorney
Middle District of Alabama
131 Clayton Street (36104)
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7106
E-mail: Eric.Counts@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

STATE OF ALABAMA )
COUNTY OF MONTGOMERY )

## VERIFICATION

I, Richard Martin, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Secret Service, that I have read the Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained therein are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and, as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the United States Secret Service.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct this 26th day of October, 2021.

Richard Martin, Special Agent
United States Secret Service

Sworn to and subscribed before me this 26 day of October, 2021.

Notary Public
Commission Expires: 8-25-25

11